# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2018

Lyle W. Cayce
Clerk

No. 17-10759

MICHAEL ADKINS; MIKE ADKINS; BRAD BEVEL; RUSSELL BEAKLEY; BRIAN BEVEL; DARIN DRURY; DOUG EASTERLING; JOHN BEN GLOVER; JOHN CHAD GLOVER; GODSEY BROS. PARTNERSHIP; RICKY HARLAN; HASKELL FARMS PARTNERSHIP; CRAIG ROGERS; STEWART FARMS; THREE M FARMS; GREG URBANCZYK; MIKE URBANCZYK; STEVEN URBANCZYK,

> Plaintiffs - Appellees

v.

STEVEN C. SILVERMAN, Director, National Appeal Division; THOMAS JAMES VILSACK, The United States Department of Agriculture; BRANDON WILLIS, Administrator of the Risk Managment Agency and Manager of the Federal Crop Insurance Corporation,

> Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, JONES, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

This case involves crop insurance for farmers. Unlike other types of insurance, such as home or car insurance, crop insurance sometimes protects an asset that does not yet exist. For example, the insurance may cover the effects of a drought or other unusual weather that prevents crops from growing. Since the crops do not exist, the insurance policies often predict how much a farmer will grow based on historical data about that farmer's crops or

No. 17-10759

other crops in the area.

At issue here is a statutory scheme that dictates how to calculate farmers' crop insurance policies. Under the Agricultural Act of 2014, farmers were granted the right to exclude certain historical data from being incorporated into the calculation of their policies' terms. But for insurers to determine whether data could be excluded, the federal agency responsible for overseeing crop insurance, the Federal Crop Insurance Corporation (or the FCIC), first had to compile data about the crops. In some instances, this calculation was not done in time for the 2015 crop year. We are asked to decide whether farmers were permitted to exclude the historical data for the 2015 crop year, even though the FCIC had not completed its data compilation. We conclude they were and AFFIRM the judgment of the district court.

## I. Background

In the United States, the crop insurance industry is overseen by a congressionally-created corporation, the FCIC. *See* 7 U.S.C. § 1503. Though structured as a corporation, the FCIC is designated as an "agency of and within the Department [of Agriculture]." *Id.* The Department of Agriculture's Office of Risk Management (usually referred to as the Risk Management Agency), supervises the FCIC. *See* 7 U.S.C. § 6933(b)(1). To fulfill its mission of overseeing crop insurance, the Risk Management Agency and the FCIC have traditional agency authority to issue regulations, *see* 7 U.S.C. § 1506(o), but the FCIC also can go out into the market place to insure or reinsure crops, *see* 7 U.S.C. § 1508(a)(1).

The Federal Crop Insurance Act, codified at 7 U.S.C. § 1508, has both broad and specific directives constraining the FCIC's authority. For example, the provision authorizing the FCIC to insure and reinsure crops indicates that its authority to do so is contingent on the availability of "sufficient actuarial data . . . as determined by the [FCIC]." 7 U.S.C. § 1508(a)(1). Other provisions

2

No. 17-10759

require the FCIC to provide specific types of plans and calculate aspects of policies in a particular manner.

Relevant to this case are provisions directing the FCIC to calculate a farmer's expected yield in a particular manner. *See* 7 U.S.C. § 1508(g). Yield coverage—as its name implies—protects the crops the farmer anticipates producing. *See* 7 U.S.C. § 1508(c)(3)–(4), (e). If the farmer produces an unusually low amount due to a covered event, then the insurer pays the farmer. The Federal Crop Insurance Act includes different methods for determining expected yield.

One method, and the focus of this appeal, is actual production history. *See* 7 U.S.C. § 1508(g)(2)(A). Actual production history looks at how much a specific farm produced of a specific crop in the past. The FCIC maintains "a production data base" to track the farm's production history. *Id.* Once the FCIC has enough data—a minimum of four years—a farmer's expected yield can be calculated using actual production history. *Id.*

Congress recently amended the methodology used to calculate actual production history with the Agricultural Act of 2014, known as "the 2014 Farm Bill." Pub. L. No. 113-79, 128 Stat. 649. Farmers now have a right to "elect to exclude" certain low-production years from being calculated into their actual production history. *See* 7 U.S.C. § 1508(g)(4)(C). To exclude a year, the production of the crop in that year has to meet certain requirements. Farmers can exclude a year if the per-acre production of a crop in the farmer's *county* that year was fifty percent below the county average per-acre production for the preceding ten years. 7 U.S.C. § 1508(g)(4)(C)(i). Farmers can also exclude a year if a "contiguous county" to the farmer was eligible to exclude the year, even if the farmer's own county did not meet the fifty-percent threshold. 7 U.S.C. § 1508(g)(4)(C)(ii).

Nothing is confusing about the exclusion provision on its face. The

No. 17-10759

problem came after the 2014 Farm Bill was enacted but before the FCIC had gathered sufficient county data to calculate whether certain years were excludable.  The FCIC says it was overwhelmed and therefore did not compile all the data within a timeframe sufficient to provide the information for all 2015 crops.

Because, in its view, Congress had not attached a deadline to the exclusion provision, the FCIC indicated it would not immediately implement the exclusion provision for all crops.  In June 2014, the FCIC issued regulations permitting farmers to exclude a previous year if there was sufficient data "provided in the actuarial documents."  *See* The Common Crop Insurance Regulations, 79 Fed. Reg. 37,155, 37,164 (effective June 30, 2014).  But the FCIC explained that "[p]roduction data availability and intensive data analysis may limit FCIC's ability to authorize exclusions of yields for all [actual production history] crops in all counties."  *Id.* at 37,158.  Consequently, "to allow flexibility, FCIC . . . revised the [Common Crop Insurance Policy] Basic Provisions to allow the actuarial documents to specify when insureds may elect to exclude any recorded or appraised yield."  *Id.*  Farmers would have to wait while the FCIC gathered necessary county data before they could exclude some crops in some counties.

By October 2014, the FCIC had implemented the exclusion provision for eleven spring crops, representing about three-quarters of the crop insurance program's total liability.  *See Implementing the Agricultural Act of 2014: Commodity Policy and Crop Insurance: Hearing Before the Subcomm. on Gen. Farm Commodities & Risk Mgmt. of the Comm. on Agric.*, 114th Cong. 8 (statement of Brandon Willis, Administrator, Risk Management Agency) (2015) (hereinafter, "Agric. Comm. Testimony").  But others remained uncovered by the exclusion provision.

Among them were winter wheat farmers in Texas, who were petitioners

in the agency action below and are appellees now. Beginning in September 2014, many of these farmers notified their private insurance providers that they intended to exclude certain years from their actual production history calculation for the 2015 crop year. Without the actuarial data to determine whether the years could be excluded, the private insurers were in a bind. They turned to the FCIC and its supervisory authority, the Risk Management Agency, for advice.

The Risk Management Agency sent a letter to all approved insurance providers in October 2014 addressing the exclusion provision. The letter announced the crops for which the FCIC had already gathered data. It also included language that could "be used by [approved insurance providers] in responding to requests for [Actual Production History] Yield Exclusion for crops which the Risk Management Agency has not authorized such exclusion for the 2015 crop year."

After the approved insurance providers received the letter, they began responding to the winter wheat farmers in Texas. The response letters notified the farmers that they would not be able to exclude crops for the 2015 crop year, referencing the letter sent out by the Risk Management Agency.

The winter wheat farmers challenged the issuance of the letter as an adverse agency decision. The consolidated administrative proceedings were heard before the Department of Agriculture's National Appeals Division. The initial administrative judge concluded that the National Appeals Division did not have jurisdiction to hear the challenge. The winter wheat farmers appealed the decision to the Director of the National Appeals Division. The Director concluded the National Appeals Division had jurisdiction. He also concluded that the 2014 Farm Bill was ambiguous about whether the exclusion provision was, in the Director's words, "self-executing and immediately

available to crop insurance policy holders." Using the *Chevron*[1] framework, the Director then asked whether the Risk Management Agency's interpretation of the 2014 Farm Bill was reasonable, and determined it was. Consequently, he rejected the winter wheat farmers' challenge.

The winter wheat farmers then challenged the Director's determination in federal district court under the Administrative Procedures Act. The matter was referred to a magistrate judge who recommended that "the [c]ourt reverse the final decision of [the National Appeals Division]." The magistrate judge concluded that a provision of the Federal Crop Insurance Act, to which the 2014 Farm Bill was appended, made the exclusion provision effective and available to farmers the moment the 2014 Farm Bill was enacted.[2] It determined that the Director therefore had made a legal error that required "reversal of the decision and remand for proper application of the [Actual Production History] Yield Exclusion."

The district court adopted the report and recommendation of the magistrate judge based on substantially similar reasoning. The defendants—who are various officials within the Department of Agriculture, but whom we refer to collectively as the FCIC for ease—timely appealed.

## II.   Jurisdiction

Before we proceed to the merits, we briefly address our jurisdiction. The FCIC appeals from an order by the district court remanding to an agency for further proceedings. Generally, district court orders remanding to an administrative agency are not final orders. *See Mem'l Hosp. Sys. v. Heckler*, 769 F.2d 1043, 1044 (5th Cir. 1985); *see also BNSF Ry. Co. v. Am. Train*

---

[1] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

[2] The Director of the National Appeals Division had rejected that same argument, concluding that § 1508(g)(4)(A) was "at best ambiguous" on when the exclusion provision became effective.

*Dispatchers Ass'n*, 426 F. App'x 265, 266 (5th Cir. 2011) (per curiam).[3]  We have carved out an exception when the agency would be unable to later appeal the issue that is the subject of the remand order.  *See Gold v. Weinberger*, 473 F.2d 1376, 1378 (5th Cir. 1973) (concluding that an agency could not later appeal an issue regarding the standards applicable to agency proceedings); *Cohen v. Perales*, 412 F.2d 44, 48–49 (5th Cir. 1969) (concluding that an agency could not later appeal instructions regarding admission of evidence that were the subject of an initial remand order), *rev'd on other grounds sub nom. Richardson v. Perales*, 402 U.S. 389 (1971); *see also Lakes Pilots Ass'n, Inc. v. U.S. Coast Guard*, 359 F.3d 624, 625 (D.C. Cir. 2004) (explaining the rationale of the rule granting agencies wider latitude to appeal orders remanding to the administrative agencies).  In their supplemental briefing that we requested, the parties agree that all that is left for remand is a ministerial accounting to calculate the new terms of the insurance policies,[4] which the FCIC could not appeal.  Consequently, we have jurisdiction.

## III.    Standard of Review

We review de novo the issue of whether the Director's determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also Chamber of Commerce of the U.S. v. U.S. Dep't of Labor*, 885 F.3d 360, 368 (5th Cir. 2018) (applying de novo

---

[3] "An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority. 5th Cir. R. 47.5.4." *Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006).

[4] The FCIC has assured us in its supplemental brief and at oral argument that it is capable of re-calculating the policies and adjusting the farmer's policies to reflect the exclusions.  The farmers may, even today, receive additional benefits under their policies. The case thus remains live and is not moot. *See AT&T Commc'ns of Sw., Inc. v. City of Austin*, 235 F.3d 241, 243 (5th Cir. 2000) ("A case is moot 'if the issues presented are no longer live.'" (quoting *Campanioni v. Barr*, 962 F.2d 461, 464 (5th Cir.1992))).

standard of review).

## IV.  Discussion

The core question is whether the exclusion provision applied to the winter wheat farmers' request to exclude prior years in determining their 2015 crop year insurance policies.  The parties agree that the *Chevron* framework applies.  "Step one" provides that if the statute is clear, then the plain meaning of the statute applies, whatever it is.  *See Doyle v. Shalala*, 62 F.3d 740, 745 (5th Cir. 1995).  If the statute "'is silent or ambiguous' on the particular issue, the court must determine 'whether the agency's answer is based on a permissible construction of the statute.'"  *Id.* (quoting *Chevron*, 467 U.S. at 843).  "Step two," reached only if the statute is ambiguous, requires that we defer to the FCIC's proposed interpretation of the statute so long as it is reasonable.  *See id.*

The winter wheat farmers' argument is straightforward: The exclusion provision was an amendment to § 1508(g)(4).  Sub-paragraph (A) of § 1508(g)(4) makes § 1508(g)(4) applicable "for any of the 2001 and subsequent crop years."  When the exclusion provision was inserted into § 1508(g)(4) as sub-paragraph (C), sub-paragraph (A) made it immediately effective.  The farmers say they therefore win at step one of *Chevron* because the statute plainly applied at the time they attempted to use the exclusion provision.

The FCIC argues that it is not that simple, raising two potential wrinkles to create ambiguity.  First, the FCIC argues that a statute's effective date may be different than its implementation date.  The effective date is when the bill becomes law, but the implementation date is when Congress expects an agency to implement a program.  Whatever its effective date, the FCIC argues the statute is silent (and therefore ambiguous) regarding an implementation date.  Second, the FCIC argues that the statutory scheme required it to act only when it had "sufficient actuarial data."  So if it let the farmers exclude years before

it had compiled the necessary county data, it would have violated another statutory duty, thus creating an ambiguity.

Sub-paragraph (A) of § 1508(g)(4) makes clear that the entire paragraph applied from the 2001 crop year onward.  Here is the full text, broken up with a few clause markers: "[1] This paragraph shall apply [2] whenever the [FCIC] uses the actual production records of the producer to establish the producer's actual production history for an agricultural commodity [3] for any of the 2001 and subsequent crop years."  Clause 1 makes clear that the entire paragraph, i.e., § 1508(g)(4), is covered by sub-paragraph (A)'s terms.   Though the exclusion provision, sub-paragraph (C), was a later amendment to paragraph (g), it is still located within that paragraph and is thus subject to sub-paragraph (A).  Additionally, Clause 1 uses the phrase "shall apply," indicating that the FCIC was to "put [§ 1508(g)(4)] to use" when taking certain actions and at certain times.  *See Apply*, OXFORD ENGLISH DICTIONARY (3d ed. 2011).  Clause 2 specifies which actions: "whenever" the FCIC calculates actual production history.  Clause 3 specifies which times by giving a starting point for when § 1508(g)(4) applies.  The statute could not be clearer: any time the FCIC calculates actual production history for the 2001 crop year and later, all of § 1508(g)(4) applies, the exclusion provision included.

The FCIC's textual arguments to the contrary are unconvincing.  The FCIC argues that the first place courts should look to determine when the exclusion provision applies "should [be] the text of the yield exclusion provision itself."  Fair enough, but as the FCIC admits, the exclusion provision says nothing on the subject.  The general rule is that "absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991).  Additionally, when a particular amendment is silent on a subject, it is perfectly appropriate to look at surrounding provisions to determine when a provision applies.  *Cf. Garcia-*

No. 17-10759

*Carias v. Holder*, 697 F.3d 257, 263 (5th Cir. 2012) ("[A] statutory provision cannot be read in isolation, but necessarily derives meaning from the context provided by the surrounding provisions, as well as the broader context of the statute as a whole." (quoting *Khalid v. Holder*, 655 F.3d 363, 367 (5th Cir. 2011), *abrogated on other grounds by Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191 (2014))).

The FCIC contends that sub-paragraph (A) does not end the inquiry because it requires § 1508(g)(4) to be merely *effective* rather than to be *implemented*. Certainly, Congress can dictate different deadlines for when a law takes legal effect and a deadline for implementation. It did exactly that for other provisions in the 2014 Farm Bill; Congress specified deadlines for the FCIC to accomplish certain tasks, and those deadlines were after the statute became legally effective. *See, e.g.*, 7 U.S.C. § 1508(c)(6)(D)(i), (e)(5)(D), (h)(3)(C). But nothing in the text of the exclusion provision or sub-paragraph (A) indicates Congress intended the exclusion provision to have a delayed implementation date. Indeed, the FCIC's interpretation essentially reads sub-paragraph (A) out of § 1508(g)(4).

The FCIC cites three out-of-circuit cases to argue that the distinction between "effectiveness" and "implementation" means it has the authority to delay "implementation." *See Am. Water Works Ass'n v. EPA*, 40 F.3d 1266 (D.C. Cir. 1994); *Nat. Res. Def. Counsel v. EPA*, 22 F.3d 1125 (D.C. Cir. 1994) (per curiam); *Huberman v. Perales*, 884 F.2d 62 (2d Cir. 1989). These cases are either distinguishable or go against the FCIC. All three cases involved statutes using the word "effective" or "take effect," not sub-paragraph (A)'s clearer phrase, "shall apply." *See Am. Water Works Ass'n*, 40 F.3d at 1271; *Nat. Res. Def. Counsel*, 22 F.3d at 1137–38; *Huberman*, 884 F.2d at 64.

The FCIC's resort to legislative history does not change the outcome. First, the Supreme Court has stated repeatedly that where a statute's text is

clear, courts should not resort to legislative history. *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (plurality opinion) (collecting citations supporting the principle that the Supreme Court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous"). The text here is not ambiguous, so we should not introduce ambiguity through the use of legislative history. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 634 (2018) ("Even for those of us who make use of legislative history, ambiguous legislative history cannot trump clear statutory language." (internal alterations and quotations omitted) (quoting in part *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011))).

Second, even if the FCIC could create ambiguity through legislative history, the Conference Report resolves the ambiguity against the FCIC. The Conference Report explicitly states that its managers intended the exclusion provision to "be implemented in time for the 2015 crop year." 2014 Farm Bill Conf. Rep. at 539.

The FCIC raises a final argument to justify delayed implementation. It argues that interpreting § 1508(g)(4) to require immediate implementation contradicts § 1508(a)(1), which permits the FCIC to act only when it has "sufficient actuarial data." *See also* 7 U.S.C. § 1508(d)(1) (requiring the FCIC to "fix adequate premiums" at levels that are "actuarially sufficient" to maintain certain expected loss ratios). The FCIC asserts that it needed some time to first gather data to implement the exclusion provision. Without that data, it would be acting without "sufficient actuarial data" in violation of § 1508(a)(1). The conflict, the FCIC believes, creates a statutory ambiguity that it was permitted to resolve in favor of delaying implementation.

The FCIC's argument, however, is not an issue of statutory interpretation. The *text* of the two statutes do not conflict. It is entirely possible that the FCIC could have already had sufficient actuarial data for

farmers to use the exclusion provision.  Indeed, it seems plausible that the FCIC already had much of the data because, within months, it had sufficient actuarial data for three-quarters of its total liabilities.  *See* Agric. Comm. Testimony at 8.  In that situation, the agency would have no problem complying with both provisions.  We do not have a situation where two different provisions of a statute direct irreconcilable results, like explicitly different deadlines or price amounts.  *See* ANTONIN SCALIA & BRYAN GARNER, *Irreconcilability Canon*, *in* READING LAW: THE INTERPRETATION OF LEGAL TEXTS 189–91 (2012).  Any friction between the two provisions arises out of issues external to the statute or its legislative history.  The FCIC needed time to gather sufficient actuarial data, making it difficult to deliver the exclusion provision immediately or in time for the 2015 crop year.  Such a problem arises not from an ambiguous text but from Congress implementing razor sharp deadlines without, at least according to the FCIC, sufficient resources.  That does not give the FCIC authority to disregard the plain text of the statute, especially when, as the FCIC concedes, it is now capable of granting the farmers the exclusions.  *Cf. Envtl. Def. Ctr. v. Babbitt*, 73 F.3d 867, 872 (9th Cir. 1995) (concluding that though "lack of available appropriated funds" understandably prohibited the EPA from addressing a petition in a timely fashion, the EPA still had to comply with statutory requirements in a "reasonable time after appropriated funds are made available").

Consequently, the FCIC has not provided any textual or contextual clues that would cast doubt on the plain language of § 1508(g)(4).  The farmers thus prevail at step one of *Chevron*.

AFFIRMED.