# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 20, 2022

Lyle W. Cayce
Clerk

No. 20-50963

Vista Health Plan, Incorporated; Vista Service Corporation,

*Plaintiffs—Appellants*,

*versus*

United States Department of Health and Human Services; Xavier Becerra, *Secretary, U.S. Department of Health and Human Services*; Centers for Medicare and Medicaid Services; Seema Verma, *Administrator of the Centers for Medicare and Medicaid Services*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-824

Before Higginbotham, Stewart, and Wilson, *Circuit Judges*.
Cory T. Wilson, *Circuit Judge*:

Our prior panel opinion, *Vista Health Plan, Inc. v. United States Department of Health and Human Services*, 29 F.4th 210 (5th Cir. 2022), is WITHDRAWN and the following opinion is SUBSTITUTED therefor.

No. 20-50963

The United States Department of Health and Human Services (HHS) implements a risk-adjustment program under the Patient Protection and Affordable Care Act (ACA) in states that choose not to implement the program themselves. Vista Health Plan, Inc., a small health insurance company in Texas, was assessed risk-adjustment fees that exceeded its premium revenue, causing the company to cease operations. The company and its parent, Vista Service Corporation, (collectively, Vista) sued HHS, HHS Secretary Alex Azar, the Centers for Medicare and Medicaid Services (CMS), and CMS Administrator Seema Verma (collectively, the HHS Defendants), challenging the risk-adjustment program and two rules promulgated pursuant to the program. The district court granted summary judgment for the HHS Defendants on eight of nine claims asserted by Vista and remanded the only remaining claim to HHS. Because the district court partially remanded the case to HHS for further proceedings, we conclude that there was no appealable final judgment disposing of all Vista's claims. Thus, we dismiss the appeal for lack of jurisdiction.

## I.

## A.

The underlying facts are undisputed. Among other provisions, the ACA prohibits insurers from denying coverage or charging higher premiums based on health status. *See generally King v. Burwell*, 576 U.S. 473, 479–84 (2015) (summarizing the background and purpose of the ACA). Because sicker individuals generally incur higher costs for insurers, insurers are disincentivized from enrolling such individuals without charging higher premiums. To counteract this, Congress enacted 42 U.S.C. § 18063, which directs HHS to establish a risk-adjustment program.

Under the risk-adjustment program, fees are assessed against plans with healthier-than-average enrollees in a given state, and then payments are

made to plans with sicker-than-average enrollees in that state to redistribute actuarial risk. Congress designed the risk-adjustment program to be administered by the States. Some states opted not to do so, and in those states, Congress directed HHS to operate the program. 42 U.S.C. § 18041(c)(1)(B)(ii).

To assess actuarial risk, Congress directed HHS to "establish criteria and methods" for the risk-adjustment program. 42 U.S.C. § 18063(b). In turn, HHS created a three-step risk-adjustment methodology: First, for each individual enrolled in an insurer's plan, an actuarial risk score is computed using demographic and diagnostic data to determine the predicted cost of insuring that enrollee. 78 Fed. Reg. 15,410, 15,419 (Mar. 11, 2013). Second, the risk scores for each enrollee in a plan are aggregated to determine the plan's average risk score. *Id.* at 15,432. Third, a plan's risk score is multiplied by the statewide average premium, yielding the dollar amount that a given insurer will pay as a charge or receive as a payment, for that plan for that year. *See id.* at 15,430–34; *N.M. Health Connections v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1138, 1148–50 (5th Cir. 2019) (detailing the risk adjustment program methodology). HHS has used an annual rulemaking process to refine its risk-adjustment rules, but it has not reconsidered its overarching methodology anew each year.

In March 2018, a district court in New Mexico vacated HHS's risk-adjustment rules for benefit years 2014 through 2018 to the extent they relied on the statewide average premium (the third step of the risk-adjustment methodology). *See Minuteman Health, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 312 F. Supp. 3d 1164, 1207–12 (D.N.M. 2018), *rev'd*, 946 F.3d 1138 (10th Cir. 2019). Just prior, in January 2018, a district court in Massachusetts ruled in favor of HHS on the same issue. *See Minuteman Health, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 291 F. Supp. 3d 174, 198–205 (D. Mass. 2018).

No. 20-50963

Addressing the conflicting judgments, HHS issued a press release on July 7, 2018, advising insurers that "the New Mexico district court's ruling . . . bar[red] [HHS] from collecting or making payments under the current methodology, which uses the statewide average premium." Two days later, HHS stated it "w[ould] not collect or pay the specified amounts," but it "w[ould] inform stakeholders of any update to the status of collections or payments at an appropriate future date." HHS added that "[a]dditional guidance w[ould] be issued in the near future regarding 2017 benefit year appeals and reporting of risk adjustment transfer amounts by issuers."

Urged by members of Congress (among various other entities) "to act with the utmost urgency to resolve the $10.4 billion hold on the risk adjustment program," HHS issued a memorandum on July 27, 2018, stating that it would republish the previously adopted risk-adjustment program rule for the 2017 benefit year. The republished rule "utilize[d] statewide average premium for the 2017 benefit year as set forth in the rules published on March 23, 2012 . . . and March 8, 2016." Three days later, HHS published the 2017 Final Rule, which adopted "the HHS-operated risk adjustment methodology previously published at 81 [Fed. Reg.] 12204 for the 2017 benefit year with an additional explanation regarding the use of statewide average premium and the budget neutral nature of the program." HHS clarified that the "rule d[id] not make any changes to the previously published HHS-operated risk adjustment methodology for the 2017 benefit year." HHS did not follow the notice-and-public-comment procedures outlined in the Administrative Procedure Act (APA) when it republished the 2017 rule. *See* 5 U.S.C. § 553.

For the 2018 benefit year, HHS published a proposed rule on August 10, 2018, following the APA's notice-and-public-comment procedures. The 2018 rule was finally promulgated on December 10, 2018. The 2018 Final Rule adopted "the same methodology that [HHS] had previously published for the 2018 benefit year."

No. 20-50963

## B.

Vista Health Plan, Inc., began as a small health maintenance organization that was approved by the Texas Department of Insurance (TDI) to enter the health insurance market in May 2016. Vista Health Plan, Inc., and its parent company, Vista Service Corporation, sued the HHS Defendants on September 28, 2018. Vista challenged the promulgation of the 2017 and 2018 Final Rules, HHS's calculation of Vista's risk-adjustment charges, and the risk-adjustment program more generally. Vista contended that the charges assessed against it "far exceeded Vista's gross receipts" for the 2017 and 2018 benefit years, which "caused Vista to be placed under supervision by [TDI]," and ultimately resulted in TDI directing Vista to cease "sell[ing] policies in 2019."

After filing an administrative record that included "the non-privileged administrative records of the rulemaking proceedings" for the 2017 and 2018 Final Rules, the parties filed cross-motions for summary judgment. The district court granted the HHS Defendants' motion for summary judgment on eight of nine claims alleged by Vista. *See Vista Health Plan, Inc. v. United States Department of Health and Human Services*, No. 1:18-CV-824, 2020 WL 6380206 (W.D. Tex. Sept. 21, 2020).[1]

As for the remaining claim—Vista's procedural due process claim— the district court found "a genuine dispute of material fact concerning Vista's right to administrative appeal that is not adequately resolved by reference to the administrative record." *Id.* at *15. Furthermore, it concluded that the parties should have addressed 45 C.F.R. § 156.1220

---

[1] The district court "deduce[d] nine distinct claims against HHS" alleged in Vista's somewhat scattershot complaint. *Vista Health Plan*, 2020 WL 6380206, at *4. In discerning Vista's claims, the court noted that its review was limited "to those issues briefed" and that it would "not reach every allegation brought in Vista's complaint." *Id.*

No. 20-50963

(2016), which allows an issuer to "file a request for reconsideration concerning the amount of a risk-adjustment payment or charge if the amount in dispute exceeds one percent of the applicable charge and the request is filed 'within 30 calendar days of the date of the notification under § 153.310(e).'" *Id.* at *14 (quoting 45 C.F.R. § 156.1220(a)(1)(ii)). Because a request under § 156.1220(a)(1)(ii) must first be reviewed by a "CMS hearing officer," and subsequently appealed to the "Administrator of CMS," *id.* (quoting 45 C.F.R. § 156.1220(b)(1)–(2), (b)(3), (c)(2)) (internal quotation marks omitted), and because there was no record of whether Vista's request for reconsideration was reviewed by a CMS hearing officer, the district court remanded the issue to HHS for determination, *id.* at *15.

Vista now appeals the district court's ruling on five of its nine claims—notably *not* including the remanded procedural due process claim.

## II.

Instead, as to its due process claim, Vista raises an eleventh-hour contention that this court lacks jurisdiction over this appeal because of the district court's partial remand to HHS. Because we have an obligation to ensure that this court has jurisdiction, our analysis starts—and ultimately stops—with that issue. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) ("[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction . . . ." (quoting *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 73 (1997)) (internal quotation marks and citations omitted)).

Vista first raised the issue of jurisdiction in its reply brief, an awkward posture made even more so by the fact that *Vista* appealed the district court's judgment. Vista then spent most of its time at oral argument discussing jurisdiction rather than the substantive issues it raised in its opening brief. To little avail—neither Vista, nor the HHS Defendants for their part, could

clearly explain why this court lacks jurisdiction, or has it. The question revolves around whether the district court's "Final Judgment" was truly an *appealable* judgment, i.e., disposing of all claims, because the district court denied summary judgment as to Vista's procedural due process claim but then remanded it to HHS. At the very least, the HHS Defendants correctly stated at oral argument that this case "is a complete jumble that has landed in [our] laps." Revisiting our prior effort to unclutter the jumble, *see Vista Health Plan*, 29 F.4th at 219–20, we conclude that we do not have jurisdiction to decide Vista's appeal, such that we must dismiss the case.

This court is vested with "jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. "Generally, district court orders remanding to an administrative agency are not final orders." *Adkins v. Silverman*, 899 F.3d 395, 400 (5th Cir. 2018); *see* 15B Wright & Miller, Fed. Prac. & Proc. Juris. § 3914.32 (2d ed.) ("The general rule is that a remand is not appealable as a final decision, even if the court of appeals fears that the remand was ill-advised. A partial remand is even more clearly not final."). This court has recognized an exception to the general rule and determined it had jurisdiction "when the agency would be unable to later appeal the issue that is the subject of the remand order," such as when "all that is left for remand is a ministerial accounting . . . ." *Adkins*, 899 F.3d at 401. Even though it is unclear exactly what remained to be done by HHS on remand, what can be gleaned from the record indicates that the district court's partial remand was more than "ministerial" in nature.

The district court granted summary judgment for the HHS Defendants on all but one of Vista's claims. And though it denied summary judgment as to Vista's procedural due process claim, the court then explicitly entered a "Final Judgment" that stated that "nothing remains to resolve" and that "the case is hereby CLOSED"—suggesting that the court "end[ed]

No. 20-50963

the litigation on the merits and [left] nothing for the court to do but execute the judgment." *Lewis v. E.I. Du Pont De Nemours & Co.*, 183 F.2d 29, 31 (5th Cir. 1950). But the district court also remanded Vista's procedural due process claim to HHS for further proceedings based on the requirements of 45 C.F.R. § 156.1220.[2] While HHS reasonably contends that Vista abandoned its procedural due process claim by failing to challenge the district court's remand decision on appeal, the inescapable bottom line is that the district court, in denying summary judgment on Vista's procedural due process claim and then remanding it for further proceedings, did not yet fully dispose of the case. Accordingly, there was no appealable final judgment, and we lack jurisdiction to reach the substance of Vista's appeal.

APPEAL DISMISSED.

---

[2] It may well be that those requirements have been met by HHS while this appeal was pending. The HHS Defendants invite this court to take judicial notice of two letters HHS sent to Vista, on November 12, 2019, and July 19, 2021, that purportedly address Vista's procedural due process claim post remand. The July, 19, 2021 letter recites that "[a]lthough the [district] court indicated that it was unaware of the status of Vista's request for reconsideration, CMS had in fact already resolved Vista's request for reconsideration in its letter dated November 12, 2019." Defendants' motion was not contested by Vista. But the district court has not yet had the opportunity to address the letters, and "we are a court of review, not first view." *United States v. Houston*, 792 F.3d 663, 669 (5th Cir. 2015). At this juncture, HHS's further action on Vista's remanded claim, including the import of the proffered letters from HHS, should first be addressed by the district court. We thus deny the HHS Defendants' motion to take judicial notice of the letters and do not further address them.