**PUBLISH**

FILED
United States Court of Appeals
Tenth Circuit

November 16, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GLENN AUSMUS; RUSSELL L.
AUSMUS; DWAYNE FRITZLER;
SHIRLEY FRITZLER; BLAKE
GOURLEY; FARA GOURLEY; DEAN
JAGERS; JEFF SELF,

      Plaintiffs - Appellees,

v.

SONNY PERDUE, Secretary of the United
States Department of Agriculture;
STEVEN C. SILVERMAN, Director,
National Appeals Division; HEATHER
MANZANO, Acting Administrator of the
Risk Management Agency and Manager of
the Federal Crop Insurance Corporation,

      Defendants - Appellants.

No. 17-1442

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:16-CV-01984-RBJ)**
_____

Lowell V. Sturgill, Attorney, Appellate Staff, Civil Division, United States Department
of Justice, Washington, DC (Chad A. Readler, Acting Assistant Attorney General, United
States Department of Justice, Washington, DC; Bob Troyer, United States Attorney,
Office of the United States Attorney for the District of Colorado, Denver, Colorado;
Charles W. Scarborough and Thais-Lyn Trayer, Attorneys, Appellate Staff, Civil
Division, United States Department of Justice, Washington, DC, on the briefs), appearing
for Appellants.

Jeremiah L. Buettner (Jeff L. Todd, with him on the brief), McAfee & Taft A
Professional Corporation, Oklahoma City, Oklahoma, appearing for Appellees.

_____

Before **BRISCOE**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.
_____

This is an Administrative Procedure Act challenge to the Federal Crop Insurance Corporation's implementation of the Farm Crop Insurance Act, 7 U.S.C. §§ 1501–1524. Plaintiffs are winter wheat farmers from Colorado who were denied the Actual Production History yield exclusion when they purchased crop insurance for the 2015 crop year. Plaintiffs unsuccessfully sought review of the denial through the United States Department of Agriculture's administrative appeals process, and then appealed to the district court. The district court reversed the USDA's decision because it concluded that the text of the FCIA unambiguously entitled Plaintiffs to the APH yield exclusion. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

**I**

**A.    Statutory Background**

"The Federal Crop Insurance Act was enacted in 1938 as part of President Franklin Delano Roosevelt's New Deal legislation to rescue and preserve agriculture in order to restore it to its previous position of strength in the national economy." *Kansas ex rel. Todd v. United States*, 995 F.2d 1505, 1507 (10th Cir. 1993). The Act "promote[s] the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research

2

and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502(a). Congress created the Federal Crop Insurance Corporation to accomplish these goals. *Id.* § 1503. If the FCIC determines that "sufficient actuarial data are available," the FCIC "may insure, or provide reinsurance for insurers of, producers of agricultural commodities grown in the United States." *Id.* § 1058(a)(1).

As is relevant to this appeal, winter wheat farmers can purchase insurance to protect against below-average harvests. The policies at issue here offered yield protection, which is "insurance that only provides protection against a production loss" due to "unavoidable, naturally occurring events." 7 C.F.R. § 457.8 (Common Crop Insurance Policy Basic Provisions, Definition & Causes of Loss Sections). The amount of coverage available for purchase is "determined by multiplying the production guarantee by [the] projected price." *Id.* (Definition Section). A "projected price" is calculated by the FCIC for each crop for each crop year. *Id.* The production guarantee is "[t]he number of . . . bushels" of wheat insured, and is "determined by multiplying the approved yield per acre by the coverage level percentage" elected by the farmer. *Id.* The coverage level percentage is the percentage of a farmer's expected harvest that he wishes to insure. *Id.*; 7 U.S.C. § 1508(c)(4)(A). The "approved yield" is "[t]he actual production history (APH) yield, calculated . . . by summing the yearly . . . yields and dividing the sum by the number of yields." 7 C.F.R. § 457.8 (Definition Section).

Therefore, when a winter wheat farmer decides to purchase a yield protection policy, he must choose what percentage of his expected harvest he wants to insure.

3

The FCIC then calculates his APH yield and the projected price for winter wheat for that crop year. The amount of coverage available for purchase, on a per acre basis, is the product of these three figures: the projected price, the coverage level percentage, and the APH yield. For example, if a farmer wants to insure 75% of his harvest, has historically grown an average of 60 bushels of wheat per acre, and the projected price is $3.40 per bushel, the value of the coverage is $153.00 per acre. *See* 7 C.F.R. § 457.101 ¶ 11 (Small grains crop insurance provisions). Given this method for calculating insurance coverage, a farmer's actual production history is important. The higher a farmer's actual production history, the more insurance a farmer can purchase.

A farmer's actual production history is a simple average of between four and ten years of his production data. 7 U.S.C. § 1508(g)(2)(A); 7 C.F.R. § 457.8 (Definition Section). Therefore, if production is abnormally low in one of those years, a farmer's APH will be depressed until that data point falls out of the APH calculation. In 2000, Congress amended the FCIA to allow the FCIC to adjust a farmer's actual production history when a farmer had experienced an especially poor harvest. *See* Agricultural Risk Protection Act of 2000, Pub. L. No. 106-224, § 105(b), 114 Stat. 358, 366–67 (codified at 7 U.S.C. § 1508(g)(4)). This yield exclusion applied when the FCIC used a farmer's "actual production history for an agricultural commodity for any of the 2001 and subsequent crop years." 7 U.S.C. § 1508(g)(4)(A).

4

In February 2014, Congress amended § 1508(g)(4), the yield exclusion that was enacted in 2000, to add the APH yield exclusion. *See* Agricultural Act of 2014, Pub. L. No. 113-79, § 11009, 128 Stat. 649, 957 (codified at 7 U.S.C. § 1508(g)(4)(C)). The APH yield exclusion allows a farmer to exclude a yield from the FCIC's APH calculation when "the per planted acre yield of the agricultural commodity in the county of the producer was at least 50 percent below the simple average of the per planted acre yield of the agricultural commodity in the county during the previous 10 consecutive crop years." 7 U.S.C. § 1508(g)(4)(C)(i). The 2014 Farm Bill made no other substantive changes to § 1508(g)(4), which states:

> (4) Adjustment in actual production history to establish insurable yields
>
> (A) Application
>
> This paragraph shall apply whenever the Corporation uses the actual production records of the producer to establish the producer's actual production history for an agricultural commodity for any of the 2001 and subsequent crop years.
>
> . . .
>
> (C) Election to exclude certain history
>
> (i) In general
>
> Notwithstanding paragraph (2), with respect to 1 or more of the crop years used to establish the actual production history of an agricultural commodity of the producer, the producer may elect to exclude any recorded or appraised yield for any crop year in which the per planted acre yield of the agricultural commodity in the county of the producer was at least 50 percent below the simple average of the per planted acre yield of the agricultural commodity in

5

the county during the previous 10 consecutive crop years.

. . .

(D) Premium adjustment

In the case of a producer that makes an election under subparagraph (B) or (C), the Corporation shall adjust the premium to reflect the risk associated with the adjustment made in the actual production history of the producer.

7 U.S.C. § 1508(g)(4).

## B.    Procedural Background

On July 1, 2014, the FCIC published an interim rule to implement the 2014 Farm Bill.  General Administrative Regulations; Catastrophic Risk Protection Endorsement; Area Risk Protection Insurance Regulations; and the Common Crop Insurance Regulations, Basic Provisions, 79 Fed. Reg. 37,155.  In that interim rule, the FCIC warned that the APH yield exclusion "may not be implemented upon publication" because "[p]roduction data availability and intensive data analysis may limit FCIC's ability to authorize exclusions of yields for all APH crops in all counties." *Id.* at 37,158.  Therefore, the FCIC amended the Common Crop Insurance Policy (CCIP) Basic Provisions—the actual terms of the insurance policy offered for sale—"to allow the actuarial documents to specify when insureds may elect to exclude any recorded or appraised yield." *Id.*  The revised CCIP Basic Provisions stated that farmers "may elect" the APH yield exclusion "[i]f provided in the actuarial documents."  7 C.F.R. § 457.8 (Insurance Guarantees, Coverage Levels, and Prices Section).  In effect, the interim rule made farmers eligible for the APH yield

6

exclusion on a rolling basis as the FCIC updated its actuarial documents to add newly eligible crops.

The deadline for winter wheat farmers to purchase insurance for the 2015 crop year was September 30, 2014. App'x at 89. When Plaintiffs purchased insurance, they elected to use the APH yield exclusion. Supp. App'x at 1, 16, 31, 33, 35, 43, 51, 53. But in a letter dated October 31, 2014, the USDA notified insurance providers that the APH Yield Exclusion would not be available for winter wheat for the 2015 crop year. App'x at 76. The letter stated that insurance providers could respond to farmers' elections by pointing them to the USDA's "actuarial documents," which did not yet "reflect that such an election is available." *Id.*

Plaintiffs sought review of this denial through the USDA's administrative appeals process. *Id.* at 86. An administrative judge determined that she lacked jurisdiction over Plaintiffs' challenge because the October 2014 letter to insurance providers was not an adverse agency decision. *Id.* at 96. Plaintiffs then appealed to the Director of the National Appeals Division. *Id.* at 105. The Director found that the October 2014 letter was an adverse agency decision, but affirmed the FCIC's decision not to make the APH yield exclusion available to winter wheat farmers for the 2015 crop year. *Id.* at 119. The Director afforded *Chevron* deference to the FCIC's interpretation of 7 U.S.C. § 1508(g)(4)(C) and concluded that the FCIC reasonably denied winter wheat farmers the APH yield exclusion for the 2015 crop year. *Id.* at 118.

Plaintiffs appealed the Director's decision to the United States District Court for the District of Colorado. *Id.* at 125. The district court reversed the Director's decision and remanded the case to the FCIC with instructions to retroactively apply the APH yield exclusion to Plaintiffs' 2015 crop year insurance policies. *Id.* at 120–31. The district court reasoned that the statute unambiguously made the APH yield exclusion available to all farmers on the day the 2014 Farm Bill was enacted. *Id.* at 131. Defendants timely filed a notice of appeal. *Id.* at 134.

## II

We first briefly address our jurisdiction because the district court remanded the matter for the FCIC to retroactively apply the APH yield exclusion. *Id.* at 131. "Remand by a district court to an administrative agency for further proceedings is ordinarily not appealable because it is not a final decision." *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 697 (10th Cir. 2009) (alteration omitted). But sometimes "the nature of [the agency's] proceeding and the character of the [district court's] decision below indicate that viewing that decision as a 'remand' would strain common sense." *Id.* at 699. In those circumstances, we treat "the district court's order . . . not [as] an administrative remand, but rather [as] a final order that we have jurisdiction to review under 28 U.S.C. § 1291." *Id.* Such is the case here. The district court's order was a final decision because the FCIC "appeared in the district court as a traditional adversarial party, defending its own actions," and the district court's order required the FCIC to retroactively apply the APH yield exclusion, "not . . . recommence a proceeding." *Id.* at 698.

8

Turning to the substance of this appeal, we review Plaintiffs' challenge to the FCIC's interpretation of § 1508(g)(4)(C) under the Administrative Procedure Act. *Sinclair Wyo. Ref. Co. v. U.S. Envtl. Prot. Agency*, 887 F.3d 986, 990 (10th Cir. 2017). "The APA requires courts to consider agency action in conformity with the agency's statutory grant of power, and agency action is unlawful if it is 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'" *Id.* (citing 5 U.S.C. § 706(2)(C)). "We review questions of statutory interpretation de novo." *Id.*

"When a court reviews an agency's legal determination, it generally applies the analysis set out by the Supreme Court in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984)." *Id.* (parallel citation omitted). "[T]he initial step of the *Chevron* inquiry is . . . to determine whether *Chevron* should apply at all." *Id.* (emphasis omitted). If *Chevron* applies, we

> ask[] whether Congress has directly spoken to the precise question at issue. If Congress's intent is clear, then both the court and the agency must give effect to the unambiguously expressed intent of Congress. . . . But, if Congress has not directly addressed the precise question at issue—if the statute is silent or ambiguous with respect to the specific issue—the court must determine . . . whether the agency's answer is based on a permissible construction of the statute.

*Id.* (citations and quotation marks omitted).

This appeal concerns the deadline for the FCIC to make the APH yield exclusion available to farmers. The FCIC concluded that § 1508(g)(4) did not establish a firm date for implementation of the APH yield exclusion. Aplt. Br. 20–

9

27.  Therefore, the FCIC interpreted § 1508(g)(4) to allow phased implementation of the APH yield exclusion as the FCIC acquired and analyzed historical production data.  App'x at 76.  Plaintiffs argue that the FCIC erred because § 1508(g)(4)(A) unambiguously required the FCIC to make the APH yield exclusion available "for any of the 2001 and subsequent crop years," a time period that includes the 2015 crop year for which Plaintiffs sought to elect the APH yield exclusion.  Aple. Br. 17–18.

Plaintiffs are correct.  Regardless of the deference we afford the FCIC, the FCIC erred because Congress "directly addressed the precise question at issue."[1] *Sinclair Wyo. Ref.*, 887 F.3d at 990.  "Courts determine Congress's intent by employing the traditional tools of statutory interpretation, beginning—as always— with an examination of the statute's text." *Id.*  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Keller Tank Servs. II, Inc. v. Comm'r*, 854 F.3d 1178, 1196 (10th Cir. 2017) (quotation marks omitted).

Section 1508(g)(4)(A) states that "[t]his paragraph," which includes the APH yield exclusion, "shall apply whenever the [FCIC] uses the actual production records of the producer to establish the producer's actual production history for an agricultural commodity for any of the 2001 and subsequent crop years."  7 U.S.C. § 1508(4)(A), (C).  "Th[e] term ['shall'] indicates a mandatory intent," *Jewell v.*

---

[1] The Fifth Circuit recently reached the same conclusion in a case brought by winter wheat farmers from Texas.  *See Adkins v. Silverman*, 899 F.3d 395 (5th Cir. 2018).

*United States*, 749 F.3d 1295, 1298 (10th Cir. 2014)—here, an intent that the APH exclusion apply for the 2015 crop year.

The FCIC argues that the term "apply" creates ambiguity because it could refer to the APH yield exclusion's legal effective date instead of its implementation date. Aplt. Br. 24–25. Under the FCIC's interpretation, Congress intended the APH yield exclusion to be legally effective, but not implemented, for the 2015 crop year. But here, "apply" refers to implementation of the APH yield exclusion, not just its legal effectiveness. *See Apply*, Black's Law Dictionary (10th ed. 2014) ("To put to use with a particular subject matter"); *Apply*, Oxford English Dictionary (3d ed. 2008) ("To bring (a rule, a test, a principle, etc.) into contact with facts; to bring to bear practically; to put into practical operation.").

The use of "apply" in § 1508(4)(A) is therefore unlike the use of "take effect" in the cases relied on by the FCIC. *See Am. Water Works Ass'n v. E.P.A.*, 40 F.3d 1266, 1271–72 (D.C. Cir. 1994); *Nat. Res. Def. Council v. E.P.A.*, 22 F.3d 1125, 1137–40 (D.C. Cir. 1994). In those cases, the "take effect" language was ambiguous and the agency reasonably concluded that it did not establish an implementation deadline. *See Am. Water Works Ass'n*, 40 F.3d at 1272; *Nat. Res. Def. Council*, 22 F.3d at 1138–39. Conversely, § 1508(g)(4)(A) imposes an ongoing duty on the FCIC "whenever" it calculates a farmer's actual production history using actual production records. Such an ongoing duty to "apply" § 1508(g)(4) is best understood as a command to implement, not a statement of legal effectiveness.

True, other provisions added to the FCIA by the 2014 Farm Bill included specific implementation deadlines. *See, e.g.*, 7 U.S.C. §§ 1508(c)(6)(D)(i), (e)(5)(D), 1508b(a). But those provisions were incorporated into sections of the FCIA that lacked the type of implementation language found in § 1508(g)(4)(A). Therefore, Congress had no need to write a specific implementation deadline into § 1508(g)(4)(C) because § 1508(g)(4)(A) already supplied the deadline.

The FCIC also argues that the APH yield exclusion should not be read to apply to the 2015 crop year because the FCIC did not have enough time to collect and analyze the necessary data before the 2015 crop year. Aplt. Br. 25–26. The FCIC maintains that offering the APH yield exclusion for the 2015 crop year would have conflicted with its obligation to offer actuarially sound insurance policies. *See* 7 U.S.C. § 1508(a)(1), (d)(2)(B)(i). Though we are not unsympathetic to the practical difficulties that the FCIC faced in complying with the various data-intensive provisions of the 2014 Farm Bill, those difficulties do not alter our analysis of what Congress intended when it enacted the APH yield exclusion using mandatory "shall" language. *See Forest Guardians v. Babbitt*, 174 F.3d 1178, 1191–93 (10th Cir. 1999) (lack of Congressional appropriations, which purportedly rendered it impossible to comply with a provision of the Endangered Species Act, did not "relieve" the agency of its "non-discretionary [statutory] duties").

Finally, the FCIC relies on legislative history to argue that Congress did not intend the APH yield exclusion to be implemented "in time for winter wheat producers" to purchase insurance for the 2015 crop year. Aplt. Br. 26–27. We first

12

note that, "when the meaning of the statute is clear, it is both unnecessary and improper to resort to legislative history to divine congressional intent." *Ribas v. Mukasey*, 545 F.3d 922, 929 (10th Cir. 2008) (quotation marks and alteration omitted). But even "assum[ing] *arguendo* that an inquiry into legislative history is . . . appropriate even where the statute's text and structure evince Congress's intent," *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1227 (10th Cir. 2017), we are not persuaded that the legislative history supports the FCIC's view that it could deny Plaintiffs the APH yield exclusion for the 2015 crop year. In fact, our reading of the legislative history points to the opposite conclusion. The conference report states:

> The Managers note that [the APH yield exclusion] provision is effective upon the date of enactment of the [2014] Farm Bill. To the extent that it is not feasible to implement for the 2014 crop year due to the reinsurance year already having begun, *the Managers intend that the provision will be implemented in time for the 2015 crop year*.

H.R. Rep. No. 113-333, at 539 (2014) (Conf. Rep.) (emphasis added). Though the conference report indicates that Congress anticipated some gap between the statute's effective date and the implementation of the APH yield exclusion, the report makes clear that "the Managers intend[ed] that the [APH yield exclusion] . . . be implemented in time for the 2015 crop year." *Id.* As established by the FCIC, the deadline to purchase insurance for winter wheat for the 2015 crop year was September 30, 2014—seven months after the 2014 Farm Bill was passed. 7 C.F.R. § 457.101; *see also* App'x at 89. Because the FCIC did not make the APH yield

13

exclusion available to winter wheat farmers by September 30, 2014, legislative history does not aid the FCIC's interpretation of § 1508(g)(4)(C).

### III

Because Congress instructed the FCIC to make the APH yield exclusion available for the 2015 crop year, we AFFIRM.

14

*Ausmus, et al. v. Perdue, et al.*, No. 17-1442
**BACHARACH**, J., concurring in the judgment.

I agree with the majority that Congress has directly spoken through the Federal Crop Insurance Act, unambiguously requiring the FCIC to make the APH exclusion available for the 2015 crop of winter wheat. The FCIC's argument therefore fails at step one of *Chevron*, and the district court correctly reversed the decision of the Director of the National Appeals Division of the United States Department of Agriculture. I write separately to explain my thinking.

1.      **Standard of Review**

We engage in de novo review of the district court's ruling. *Utah Envtl. Cong. v. Bosworth*, 443 F.3d 732, 739 (10th Cir. 2006). Like the district court, we would ordinarily consider whether the FCIC's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). But this inquiry turns here on statutory interpretation, which we review de novo. Maj. Op. at 9.

2.      **In 7 U.S.C. § 1508(g)(4)(A), Congress unambiguously required the FCIC to offer the APH exclusion whenever coverage is based on actual production history.**

In conducting de novo review, we begin with the statutory text. *Id.* In 7 U.S.C. § 1508(g)(4), Congress created the APH exclusion, using the heading "Application" and stating that the provision "shall apply whenever the [FCIC] uses the actual production records of the [farmer] to establish

the [farmer's] actual production history for an agricultural commodity for any of the 2001 and subsequent crop years." 7 U.S.C. § 1508(g)(4)(A). This provision, on its face, unambiguously makes the APH exclusion available for the 2015 crop of winter wheat whenever the coverage is based on actual production history. *See Adkins v. Silverman*, 899 F.3d 395, 402 (5th Cir. 2018) ("The statute could not be clearer: any time the FCIC calculates actual production history for the 2001 crop year and later, all of § 1508(g)(4) applies, the exclusion provision included.")

The FCIC argues that treating this provision as unambiguous would require us to overlook differences between effective dates and implementation dates. I disagree.

It is true that the effective and implementation dates may be different. *See Nat'l Res. Def. Council v. EPA*, 22 F.3d 1125, 1137 (D.C. Cir. 1994) (per curiam) ("'[T]ake effect [on a given date]' does *not* mean 'be fully implemented' by that date." (emphasis in original)); *Levesque v. Block*, 723 F.2d 175, 186 (1st Cir. 1983) ("[T]he Senate Agriculture Committee saw a difference between an effective date and an implementation date, and it believed that even after the amendments became 'effective' they would not be self-executing; 'implementation' would be necessary."). As a result, Congress can specify an effective date without requiring immediate implementation. *See Adkins v. Silverman*, 899 F.3d 395, 402 (5th Cir. 2018) ("Certainly, Congress can dictate different

2

deadlines for when a law takes legal effect and a deadline for implementation.").

In § 1508(g)(4)(A), Congress stated when the exclusion would "apply" in a section entitled "Application." We must decide whether this combination of terms refers to the date that the APH exclusion takes effect or is implemented. To answer, we consider

- the dictionary definitions of "apply"[1] and

- the relationship to other parts of the statute.[2]

As the majority explains, the dictionary definitions of "apply" refer not only to effectiveness but also to implementation. Maj. Op. at 11.

The dictionary definitions match Congress's treatment of the terms "Application" and "apply" (elsewhere in the bill) as dates of implementation. For example, § 11003(d) of the 2014 Farm Bill is entitled "Application Date" and states that "the [FCIC] shall begin to provide additional coverage . . . not later than for the 2015 crop year." Agricultural Act of 2014, Pub. L. No. 113-79 § 11003, 128 Stat. 649, 956 (codified at 7 U.S.C. § 1508 note).

---

[1]    *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1180 (10th Cir. 2005).

[2]    *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1223–24 (10th Cir. 2017).

3

In addition, § 4022(c) of the Farm Bill bears the title "Application Date" and specifies that the provision generally "shall apply" beginning on the date of enactment. *Id.* § 4022(c), 128 Stat. at 808–09 (codified at 7 U.S.C. §§ 2014 note; 2025 note). The FCIC argues that the term "Application" does not refer to the date of implementation. But this argument is untenable based on the remainder of § 4022(c), which

- creates a general rule using the terms "Application" and "apply" and

- carves out exceptions that pertain specifically to implementation.

*See, e.g.*, *id.* § 4022(c)(2)(A) ("Not later than 180 days after the date of enactment of this Act, the Secretary shall . . . develop and publish the process for selecting pilot projects . . . and . . . issue such request for proposals."). Of course, the exceptions became necessary only because the statutory terms "Application" and "apply" had created a general rule for implementation of the statute. Consequently, the presence of exceptions reflects Congress's creation of a general rule for implementation based on the combination of the terms "Application" and "apply."

In 7 U.S.C. § 1508(g)(4)(A), Congress uses the same heading ("Application") and the same directive ("shall apply") that are used in § 4022(c) of the Farm Bill; the only difference is that § 1508(g)(4) has no exceptions. When the entire Farm Bill is read together, § 1508(g)(4)(A)'s

4

reference to the heading "Application" and the directive "shall apply"—in combination—must govern not only effectiveness but also implementation.

I therefore consider § 1508(g)(4)(A) unambiguous based on dictionary definitions and other parts of the 2014 Farm Bill.

**3.    The legislative history does not affect the unambiguous meaning of § 1508(g)(4)(A).**

Given this unambiguous content, the legislative history does not provide meaningful insight.

We may assume, for the sake of argument, that consideration of legislative history can be appropriate even when the statutory text appears to unambiguously reflect congressional intent. Even if legislative history were usable at step one of *Chevron*, however, we could use that legislative history only if it were itself unambiguous:

> [T]he plain language of this statute appears to settle the question before us. Therefore, we look to the legislative history to determine only whether there is "clearly expressed legislative intention" contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses.

*New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1227 (10th Cir. 2017) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 n.12 (1987)).

Both sides rely on an excerpt from the House's conference report:

> The Managers note that [the APH exclusion] provision is *effective* upon the date of enactment of the [2014] Farm Bill. To the extent that it is not feasible to *implement* for the 2014 crop year due to the reinsurance year already having begun, the

5

> Managers intend that the provision will be *implemented* in time for the 2015 crop year.

H.R. Rep. No. 113-333, at 539 (2014) (emphasis added). This excerpt is itself ambiguous.

The farmers interpret this excerpt as confirmation that the APH exclusion would become immediately available under § 1508(g)(4)(A). Under this interpretation, Congress is instructing the FCIC to apply the exclusion for the 2015 crop year. *See Adkins v. Silverman*, 899 F.3d 395, 403 (5th Cir. 2018). This interpretation is plausible because it reasonably

- interprets the word "effective" as referring to the statute's implementation for the upcoming year of crops and

- interprets the word "implement" as referring to the FCIC's ability to timely calculate the APH exclusion.

But the FCIC also proposes a plausible interpretation. Under this interpretation, the excerpt suggests that Congress used the term "effective" to set the effective date and delegated implementation to the FCIC while urging the FCIC to expedite the offering. Thus, the conference report is itself ambiguous.[3] Given this ambiguity, the conference report does not affect the unambiguous meaning of § 1508(g)(4)(A).

---

[3]     The farmers also cite post-enactment statements by two members of Congress, but these statements do not bear on the meaning of the law at the time of enactment. *See Barber v. Thomas*, 560 U.S. 474, 486 (2010) ("[W]hatever interpretive force one attaches to legislative history, the Court normally gives little weight to statements, such as those of the individual legislators, made *after* the bill in question has become law." (emphasis in original)).

6

**4. Calculating the APH exclusion for the 2015 crop of winter wheat does not conflict with the FCIC's other statutory obligations.**

The FCIC also argues that other statutory obligations create ambiguity by restricting offerings of crop insurance until all necessary underwriting data has been collected. In my view, however, the FCIC has misinterpreted these provisions. Properly interpreted, they do not conflict with the statutory obligation to offer the APH exclusion whenever coverage is based on actual production history.

The FCIC argues that it needed time to gather data and make calculations. But Congress did not require the FCIC to offer the exclusion right away. Instead, Congress simply required the FCIC to offer the exclusion for the next crop year. 7 U.S.C. § 1508(a)(1). The farmers' deadline to buy insurance for the 2015 crop of winter wheat was September 30, 2014. But by that time, § 1508(g)(4)(A) had been in effect for over seven months.

The FCIC points out that the APH exclusion required millions of calculations. But the FCIC was able to make the required calculations for eleven of the crops by October 21, 2014—just three weeks after the farmers' deadline to insure their 2015 crops of winter wheat.[4]

---

[4]    The FCIC states that it completed the calculations for the 2015 crop of winter wheat within three months of the farmers' deadline to purchase insurance coverage.

But let's assume that the FCIC couldn't have made these calculations by the farmers' deadline to insure their winter wheat. The question would then be whether Congress had (1) created an unrealistic deadline or (2) intended to give the FCIC flexibility on whether to postpone the APH exclusion. Given these dual possibilities, the FCIC considers the statute ambiguous because of a potential inconsistency with three statutory sections: 7 U.S.C. § 1508(a)(1), § 1508(d)(1), and § 1506(n)(1). I disagree.

Section 1508(a)(1) obligates the FCIC to ensure "sufficient actuarial data are available (as determined by the Corporation)" before providing insurance or reinsurance for crops. 7 U.S.C. § 1508(a)(1). Under this provision, the FCIC argues that it lacks the statutory authority to offer crop insurance without enough data. But the FCIC *did* offer insurance for the 2015 crop of winter wheat based on actual production history.

With a different course, the FCIC could have complied with both § 1508(a)(1) and § 1508(g)(4)(A) even if more time had been needed. For example, the FCIC could have

- declined to insure the 2015 crop of winter wheat based on insufficient data or

- retroactively adjusted premiums and coverages for farmers (like the plaintiffs) who had already elected to utilize the APH exclusion.[5]

_____

5      The FCIC states that it decided not to make the APH exclusion available, once the data had been collected, because the farmers would have had the benefit of early information about the status of their wheat crops. But all the plaintiffs had already elected to take the APH exclusion

8

But the FCIC did not take advantage of either option. Instead, the FCIC continued to insure the 2015 crop of winter wheat with no adjustments, ignoring the statutory mandate that the FCIC offer the APH exclusion whenever the coverage is based on actual production history. Section 1508(a)(1) did not allow the FCIC to offer the insurance while depriving the farmers of the APH exclusion.

The FCIC also points to § 1508(d)(1), which obligates the FCIC to "fix adequate premiums for all the plans of insurance . . . at such rates as the Board determines are actuarially sufficient to attain an expected loss ratio of not greater than . . . 1.0." 7 U.S.C. § 1508(d)(1); *id.* § 1508(d)(1)(C). As the FCIC notes, "[a]ctuarial soundness is a bedrock requirement of the crop insurance program." Appellants' Br. at 23–24.

But the FCIC could carry out this "bedrock requirement" without violating the unambiguous directive in § 1508(g)(4)(A): When the FCIC could not adequately calculate the impact of the APH exclusion for the 2015 crop of winter wheat in the 7+ months granted by Congress, the FCIC could have declined to insure the 2015 crop of winter wheat based on actual production history or made retroactive adjustments upon completion of the calculations. The FCIC instead continued to insure the winter wheat

by September 30, 2014, the cutoff date to buy insurance for the 2015 crop of winter wheat. Appellees' Supp. App'x at 15, 30, 32, 34, 42, 50, 52, 54.

9

based on actual production history without the underwriting data for the APH exclusion.

The FCIC apparently operated under the mistaken belief that § 1508(d)(1) created an ambiguity in § 1508(g)(4)(A). It didn't. Section 1508(d)(1) simply required the FCIC to collect the underwriting data by September 30, 2014, to postpone coverage based on actual production history, or to make retroactive adjustments in the insurance policy. The FCIC didn't opt for any of these solutions.

Finally, the FCIC points to § 1506(n)(1), which grants discretion to the FCIC to "take such actions as are necessary to improve the actuarial soundness" of the crop insurance program, which can include "taking any other measures *authorized by law* to improve the actuarial soundness . . . while maintaining fairness and effective coverage for agricultural producers." 7 U.S.C. § 1506(n)(1) (emphasis added). But the FCIC identifies no other pertinent measures authorized by law that would have permitted disregard of the implementation deadline imposed in § 1508(g)(4)(A). Section 1506(n)(1) therefore does not apply.

* * *

The FCIC did not need to violate a single statutory obligation by making the APH exclusion available upon the use of actual production history.

10

**5.    Conclusion**

Together, the statutory provisions put a burden on the FCIC. The issue, however, is not the wisdom of placing this burden on the FCIC. Instead, we are only to construe the statutory text. Doing so, I believe that § 1508(g)(4) unambiguously required the availability of the APH exclusion if the FCIC were to choose—as it did—to continue insuring the 2015 crop of winter wheat based on actual production history. Thus, I agree with the majority's decision to affirm.