FILED
United States Court of Appeals
Tenth Circuit

May 19, 2020

Christopher M. Wolpert
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BOARD OF EDUCATION OF
GALLUP-MCKINLEY COUNTY
SCHOOLS,

Plaintiff-Appellant,

v.

NATIVE AMERICAN DISABILITY
LAW CENTER, INC.; and MAVIS
YAZZIE, as Parent of K.Y., Student,

Defendants-Appellees.

No. 19-2045

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 1:18-CV-01039-KBM-SCY)**

Samantha M. Adams (Katharine C. Downey with her on the briefs), Adams +
Crow Law Firm, Albuquerque, New Mexico, for Appellant.

Maureen A. Sanders, Sanders & Westbrook, P.C., Albuquerque, Mexico, for
Appellees.

Before **TYMKOVICH**, Chief Judge, **BACHARACH**, and **CARSON**, Circuit
Judges.

**TYMKOVICH**, Chief Judge.

This appeal requires us to consider the timeliness of a petition for attorneys' fees in a disability rights case arising under the Individuals with Disabilities Education Act (IDEA) and New Mexico state law. The petitioner is the Board of Education of Gallup-McKinley County Schools (Gallup), which successfully obtained summary judgment on certain IDEA claims made by Mavis Yazzie in the administrative action below. Subsequently, Gallup sought attorneys' fees from Yazzie and her counsel, the Native American Disability Law Center (NADLC).

The question presented here is whether the controlling provision of the New Mexico Administrative Code (NMAC) permits Gallup to pursue attorneys' fees within 30 days of the final decision relating to any party in the administrative action—as it did below. Or does the NMAC limit Gallup to seeking fees within 30 days of obtaining summary judgment—which Gallup failed to do.

We conclude the plain meaning of the regulatory language permits petitions for attorneys' fees made within 30 days of the final decision in the administrative action regardless of whether that decision relates to the party seeking fees. Accordingly, Gallup's petition was timely. We therefore REVERSE the district court and REMAND for further proceedings.

## I. Background

Gallup seeks attorneys' fees from Yazzie and NADLC for wrongly including it in an administrative action in front of the New Mexico Public Education Department (NMPED). Yazzie, as a parent of K.Y., sought relief under the IDEA[1] from Gallup and a separate educational entity not involved in this appeal, the New Mexico School for the Deaf. NADLC represented Yazzie in the proceedings.

Believing it was wrongly included as a respondent, Gallup demanded Yazzie voluntarily dismiss it from the administrative action and moved for summary judgment primarily on the basis that it was not the "local educational agency . . . responsible for providing a free appropriate public education . . . to K.Y. under the [IDEA]." App. at 37. Yazzie refused to voluntarily dismiss Gallup, instead opting to await the NMPED Hearing Officer's decision with respect to Gallup's motion for summary judgment. In response, Gallup threatened to seek attorneys' fees from Yazzie and NADLC if it successfully obtained summary judgment.[2]

---

[1] The Individuals with Disabilities Education Act is aimed at, among other things, ensuring all children with disabilities have a free and appropriate public education available to them. *See* 20 U.S.C. § 1400(d).

[2] Under the IDEA, a "prevailing" state educational agency is entitled to attorneys' fees in two scenarios: (1) it may obtain fees from an attorney of a

(continued...)

Several dates are relevant on appeal. On August 15, 2018, the NMPED Hearing Officer granted Gallup's motion for summary judgment, dismissing it from the case. On October 8, 2018—following a settlement between Yazzie and the remaining respondent, NMSD—the Hearing Officer issued the last decision in the administrative action, granting Yazzie's voluntary motion to dismiss. On November 7, 2018, Gallup sought to make good on its promise to seek attorneys' fees and filed a petition in federal district court against Yazzie and NADLC.[3]

The district court never reached the merits. Instead, on December 11, 2018, NADLC moved to dismiss Gallup's petition as untimely. NADLC contended that because Gallup had successfully obtained summary judgment on August 15, 2018, it was limited to seeking attorneys' fees within 30 days of that date under NMAC § 6.31.2.13(I)(25)(b). The district court agreed, reasoning that the regulation, when read in "context," permits only 30 days from the "last

[2](...continued)
parent "who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or . . . who continue[s] to litigate after the litigation clearly became frivolous, unreasonable, or without foundation"; or (2) it may obtain fees from an attorney of a parent or a parent "if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 20 U.S.C. § 1415(i)(3)(B)(i).

[3] Under the IDEA, due process hearings and civil actions appealing the results of such hearings are permitted to proceed in front of state educational agencies and state courts, *see* 20 U.S.C. § 1415(f), (i)(2), but Congress reserved jurisdiction over petitions for attorneys' fees for the federal courts. *Id.* § 1415(i)(3).

-4-

administrative decision as to the prevailing party." App. at 119.  Accordingly, the

district court dismissed the petition.  Gallup appealed.

## II.  Analysis

We review questions of regulatory interpretation *de novo*.  *See Ausmus v.*

*Perdue*, 908 F.3d 1248, 1252 (10th Cir. 2018).  In interpreting regulations, we

apply the same rules used to interpret statutes.  *Mitchell v. C.I.R.*, 775 F.3d 1243,

1249 (10th Cir. 2015).  Thus, we begin our analysis by examining the plain

language of the text of the regulation, giving the words their ordinary meaning.

*Id.*  If the meaning of the text is clear, our endeavor is at an end, and we must

enforce the regulation in accordance with its plain meaning.  *See Estate of Cowart*

*v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992).

The parties and the district court agree NMAC § 6.31.2.13(I)(25)(b)

provides the applicable limitations period for Gallup's petition.   That Section

states in full: "Any action for attorney fees must be filed within 30 days of the

receipt of the last administrative decision."  NMAC § 6.31.2.13(I)(25)(b).  All

parties rely on the plain meaning of the regulatory text, but they advance distinct

interpretations of this language.[4]  NADLC contends that because only a

---

[4]  Outside of textual arguments, the parties dedicate significant briefing to discussing the district court's decision in relation to prior case law concerning the "independent" or "derivative" nature of the right to seek attorneys' fees under the IDEA.  Aplt. Br. at 22–29; Aple. Br. at 14–20.  But this case law holds only

(continued...)

"prevailing public agency" may seek attorneys' fees, *see* NMAC

§ 6.31.2.13(I)(25)(a), the term "last administrative decision" must refer to the last

administrative decision *relating to the prevailing party*. Aple. Br. at 8. Gallup

became a prevailing party when it obtained summary judgment on August 15,

2018, and that decision was the last administrative decision relating to it.

Accordingly, NADLC asserts Gallup had 30 days from August 15 to seek attorney

fees, a deadline it missed by filing its petition on November 7.

Gallup, on the other hand, argues the term "last administrative decision"

means the "latest, ultimate, final [or] most recent decision." Aple. Br. at 15

(quoting Black's Law Dictionary 882 (6th ed. 1990) (defining "last")). Gallup

contends this refers to the final decision in the entire administrative action,

regardless of whether it related to Gallup. Here, that is the decision handed down

on October 8 dismissing the proceeding. Because its petition was filed within

thirty days of this date, Gallup asserts it was timely.

---

[4](...continued)
atmospheric relevance to the central issue in this appeal—the proper interpretation of NMAC § 6.31.2.13(I)(25)(b). Because the cases cited do not involve the interpretation of the regulation at issue, we decline to address them in detail. *See R. M-G v. Las Vegas City Schs.*, Civ. 13-0350, 2015 WL 12915573, at *2–3 (D.N.M. July 10, 2015) (addressing whether a parent qualified as a "prevailing party"); *Chavez ex rel. E.C. v. Espagnola Public Schs.*, 795 F. Supp. 2d 1244 (D.N.M. 2011) (holding what is now NMAC § 6.31.2.13(I)(25) invalid as applied to that case); *Teakell v. Clovis Muni. Schs.*, Civ. No: 04-50, 2004 WL 7337863, at *4–7 (D.N.M. June 25, 2004) (addressing a statute of limitations question prior to the passage of NMAC § 6.31.2.13(I)(25)).

We find Gallup's position best supported by the text of the regulation, the surrounding subsections, and the regulation as a whole. The term "receipt of the last administrative decision" in § 6.31.2.13(I)(25)(b) is unqualified. No language modifies or conditions it. We thus find the plain meaning of the phrase refers simply to the last administrative decision issued in the administrative proceeding—in this case, the October 8 decision.[5]

To reach the result NADLC proposes, we would need to read language into the regulation that is not there or infer some limiting condition from the structure of the regulation and surrounding subsections. NADLC asserts it "has not . . . suggested that the District Court or this Court should add any additional words to the regulation," Aple. Br. at 8, and we decline to do so.[6] *See Dean v. United States*, 556 U.S. 568, 572 (2009) (noting that in statutory interpretation "we ordinarily resist reading words or elements into a statute that do not appear on its face" (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997))). Therefore, if it is to prevail, NADLC must show how the structure of the regulation or surrounding subsections support its argument. *See Maracich v. Spears*, 570 U.S. 48, 65 (2013)

---

[5] The district court agreed that "the phrase 'last administrative decision' in isolation would seem to refer to the last decision issued in the entire matter." App. at 119.

[6] Tellingly, despite its assertion, NADLC struggles to articulate its argument without adding qualifying language to the regulation's text. *See* Aple. Br. at 5, 8 (adding "as to Gallup" and "related to Gallup" to the regulatory language).

(noting courts may consider "the text of the whole statute" in interpreting a particular provision).

NADLC attempts this by referring to the immediately preceding subsection, NMAC § 6.31.2.13(I)(25)(a). It argues that "because § 6.31.2.13(i)(25)(a) makes clear that only a prevailing party is entitled to bring an action for attorney fees, it only makes sense that the 'last administrative decision' identified in § 6.31.2.13(I)(25)(b) references the final decision *as to the prevailing party*." Aple. Br. at 8. We find this unavailing. The fact that being a prevailing party is a necessary condition to seeking attorneys' fees does not require the limitations period to run from the time a party obtains prevailing party status.

Federal Rule of Civil Procedure 54 provides a useful comparison in demonstrating why this is so. Similar to § 6.31.2.13(I)(25)(b), Rule 54 permits certain prevailing parties to seek attorneys' fees. But Rule 54 sets the entry of judgment—not the moment the party achieved prevailing party status—as the trigger for the 14-day limitations period. *See* Fed. R. Civ. P. 54(d)(2)(B)(i) (requiring a motion to be filed "no later than 14 days after the entry of judgment"). In the IDEA, Congress required that a party prevail before being entitled to attorneys' fees, but declined to set the applicable statute of limitations for seeking such fees. *See* 20 U.S.C. § 1415(i). This it left to state agencies responsible for implementing procedures under the IDEA. The New Mexico

regulators were free, under this rubric, to set the applicable limitations period without reference to the point at which a party prevails, just as the drafters of Rule 54 did. Based on the plain meaning of the regulatory text at issue here, it appears they did just that. Accordingly, we reject the argument that § 6.31.2.13(I)(25)(a) mandates NADLC's interpretation of § 6.31.2.13(I)(25)(b).

Instead of NMAC § 6.31.2.13(I)(25)(a), we find subsection 24(a) more instructive as to the meaning of the regulatory text at issue. Subsection 24(a) provides the limitations period for bringing an appeal on the merits of an IDEA administrative action. It states in full,

> (a) Any party aggrieved by the decision of a hearing officer in an IDEA matter has the right to bring a civil action in a state or federal district court pursuant to 20 USC Sec. 1415(i) and 34 CFR Sec. 300.516. *Any civil action must be filed within 30 days of the receipt of the hearing officer's decision **by the appealing party**.*

NMAC § 6.31.2.13(I)(24)(a) (emphasis added).

Simply put, the language in subsection 24(a) shows the drafters of subsection 25(b) knew how to condition a limitations period by reference to a specific party. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Unites States v. Bo*, 472 F.2d 720, 722 (5th Cir. 1972))). In subsection 24(a), the

language "by the appealing party" specifically modifies the "receipt" of the hearing officer's decision, establishing a party-related trigger for the limitations period. If NADLC's interpretation were the true intent of the drafters, we would expect subsection 25(b) to have a similar party-related trigger. In this hypothetical, the regulation would most likely read: "Any action for attorney fees must be filed within 30 days of the receipt of the last administrative decision *as to the prevailing party*." Where, as here, no such language exists, the words must be taken at their face value.

Diagraming both provisions brings this comparison into sharper relief. As shown in Figure 1 below, the "by the appealing party" language in subsection 24(a) modifies the receipt so that the limitations period is conditioned on running only when a particular party has received the decision.



**Figure 1**

By contrast, the lack of any modifying language in subsection 25(b) suggests that the receipt of the last administrative decision was not intended to be qualified.  This is shown in Figure 2.



**Figure 2**

Because the drafters understood how to use qualifying language when the intent was to condition the trigger of the limitations period on specific circumstances, the absence of such language suggests an intentional omission. *See Russello*, 464 U.S. at 23.  Accordingly, subsection 24(a) further confirms the plain meaning of subsection 25(b).  We decline to go further than the text of the regulation and, instead, interpret the words simply as they are written.[7]  Under

---

[7] The district court's decision suggests that a plain meaning interpretation may result in a situation where "a prevailing party would have to wait for an unknown length of time for a final ruling that bears no relevance on the merits of its entitlement to an attorney fees award."  App. at 120.  This, it reasoned, would contradict the intended purpose of the fee-shifting provisions, which include protecting indigent parents' rights by permitting them to seek attorney fees in
(continued...)

-11-

NMAC § 6.31.2.13(I)(25)(b), Gallup had 30 days from the last administrative decision in the underlying action to seek attorneys' fees. That decision occurred on October 8, 2018, and Gallup sought attorneys' fees on November 7, 2018—undisputedly less than 30 days later. Thus, Gallup's petition was timely.

## III. Conclusion

For the reasons stated herein, we **REVERSE** the district court's dismissal of Gallup's petition for attorneys' fees and **REMAND** for further proceedings.

---

[7](...continued)
IDEA cases. *Id.* But such policy concerns cannot overcome the plain meaning of the text of the regulation. Moreover, the negative policy consequences are not so dire as the district court suggests. As NADLC concedes, "it is the rare case where two respondents are named" in IDEA due process hearings such as those at issue here. Aple. Br. at 10 n.3. Even in those rare circumstances, the proceedings are generally designed to conclude within 45 days. *See* NMAC § 6.31.2.13(I)(7). Accordingly, even if the district court's presumed interpretation of the regulation is correct—a question we do not address because it is not currently before us on these facts—the perceived possibility will likely be infrequent and, in reality, relatively benign.

*Board of Ed. of Gallup-McKinley Cty. Schools v. Native American Disability Law Center, Inc.*, No. 19-2045
**BACHARACH**, J., concurring.

I agree with the majority that Gallup timely filed the petition for attorneys' fees. But I respectfully disagree with the majority's approach. Because the regulatory language is ambiguous, we must use all available tools to decide which interpretation is more compatible with the regulation's text, structure, and purpose. The text and structure support Gallup's interpretation, and the regulatory purpose is neutral. In combination, these factors persuade me to adopt Gallup's interpretation of the regulation.

## I.      Both interpretations of the regulatory language are plausible.

We apply the same rules of construction to regulations as we do to statutes. *Mitchell v. Comm'r.*, 775 F.3d 1243, 1249 (10th Cir. 2015). The first step is to consider the regulation's text. *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992). If the text "speaks with clarity to an issue," the inquiry is over. *Id.* But if two or more interpretations are plausible, we ask which interpretation more closely fits the regulation's text, structure, and purpose. *See Dikeman v. Nat'l Educators, Inc.*, 81 F.3d 949, 952–53 (10th Cir. 1996) (examining "the larger statutory context" to resolve ambiguity in a term's definition); *Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*, 281 F.3d 1173, 1178 (10th Cir. 2002) ("Ambiguous text can . . . be decoded by knowing the purpose behind the statute.").

In my view, the regulatory text could plausibly support either party's interpretation. The provision reads: "Any action for attorney fees must be filed within 30 days of the receipt of the last administrative decision." N.M. Code R. § 6.31.2.13(I)(25)(b). Given this language, timeliness turns on how we interpret the term "last administrative decision." Does it refer to the last decision affecting the *prevailing party* or to the last decision affecting *any party*?

Both interpretations are plausible. The term "last decision" is frequently considered a synonym of "final decision,"[1] which bears different definitions depending on the context. *See Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality is variously defined; like many legal terms, its precise meaning depends on context."). Given the various definitions and contexts, references to a decision as "last" or "final" are ambiguous. *See Scafar Contracting, Inc. v. Sec'y of Labor*, 325 F.3d 422, 425–26 & n.3 (3d Cir. 2003) (concluding that the statutory term "final disposition" is ambiguous); *Adams v. SEC*, 287 F.3d 183, 186 (D.C. Cir. 2002) (same); *Williams v. INS*, 217 F.3d 340, 343 (5th Cir. 2000) (concluding that the regulatory term "final administrative decision" is ambiguous as to whether it refers to "the 'last' administrative decision in [the] case").

---

[1]    *See Annandale Advocate v. Annandale*, 435 N.W.2d 24, 28 (Minn. 1989) ("[I]t is apparent from the legal dictionary and case law definitions that 'final decision' refers to a last decision of a person or body on a matter . . . .").

2

The ambiguity is crystallized by varying interpretations of similar terms in the context of appellate jurisdiction. Congress has generally restricted appellate jurisdiction to "final decisions" of district courts. 28 U.S.C. § 1291.[2] But appellate courts have spent thousands of pages struggling to determine whether a particular decision is "final" because "the very concept of 'finality' is ambiguous." *Shepherd v. Comm'r.*, 147 F.3d 633, 634 (7th Cir. 1998). Given the ambiguity surrounding finality, courts frequently determine whether a decision is "final" based on pragmatic considerations. *See, e.g.*, *In re Grand Jury Proceedings*, 616 F.3d 1186, 1194 (10th Cir. 2010) ("'Finality' is determined on the basis of pragmatic, not needlessly rigid *pro forma*, analysis." (quoting *United States v. Cos*, 498 F.3d 1115, 1122 (10th Cir. 2007))).

The Law Center highlights pragmatic considerations, tying the "last administrative decision" here to the decision creating status as the prevailing party. Though we might disagree with this interpretation, it is at least plausible given the frequent focus on pragmatic considerations affecting characterization of a decision as "last" or "final."

---

[2]    Exceptions exist, such as appellate jurisdiction over decisions involving preliminary injunctions. 28 U.S.C. § 1292(a)(1).

## II.    The regulatory text and structure support Gallup's interpretation.

Given the provision's ambiguity, we must decide which interpretation more closely fits its text and structure. *See* p. 1, above. I believe that Gallup's interpretation fits more closely due to the absence of a qualifier for the phrase "last administrative decision." Without a qualifier, most readers would consider an administrative decision to be "last" only if no more administrative decisions were to follow in the case. *See* Majority Op. at 9–11.

In contrast, the immediately preceding provision uses the modifying clause "by the appealing party." N.M. Code R. § 6.31.2.13(I)(24). The contrast suggests that the term "last administrative decision" refers to the final action with respect to *any party*, rather than only the *prevailing party*.

## III.   The regulatory purpose does not favor either party.

The purpose of a regulation can sometimes clarify an ambiguous provision. *See Hovet v. Allstate Ins. Co.*, 89 P.3d 69, 72 (N.M. 2004) (considering the legislative purpose to construe a statute). But the regulatory purpose here does not cut strongly in either direction.

The Law Center argues that its interpretation would better support disabled children and their parents, furthering the statute's underlying purpose. *See* 20 U.S.C. § 1400(d)(1)(B) (describing the IDEA as "ensur[ing] that the rights of children with disabilities and parents of such

4

children are protected"). But the attorney-fee provisions are designed to protect school districts from frivolous lawsuits. *See* H.R. Rep. No. 108-77, at 116 (2003) (addressing "excessive litigation under the [IDEA] and the burden that local educational agencies face in paying fees to attorneys"). So the fee-shifting provisions do not solely benefit disabled children and parents.

Even if the fee-shifting provisions were intended to protect the rights of disabled children and their parents, the Law Center's interpretation might not significantly benefit disabled children and their parents. The Law Center argues that if a school district could wait to file a fee petition, parents couldn't consider those costs when negotiating settlements with any remaining school districts. But this scenario is uncommon. Even if indemnification were available under the IDEA, parents could negotiate for indemnification without knowing whether a fee petition would follow. So a delayed fee petition from a prevailing school district would not necessarily affect parents' ability to negotiate a fair settlement with other school districts.

## IV. Conclusion

Both parties' interpretations of the regulation are plausible. But Gallup's interpretation more closely fits the regulatory text and structure, and the regulatory purpose does not favor either party. I thus join my colleagues in reversing and remanding to the district court.